IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
SEP 2 2 2008
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| Michael J. Webb, )| |
| Plaintiff, )| |
| )| |
| v. )| 1:07cv1203 (LO/BRP) |
| )| |
| Harley G. Lappin, et al., )| |
| Defendants. )| |

## MEMORANDUM OPINION

Michael J. Webb, a federal inmate formerly housed in the Eastern District of Virginia and proceeding pro se, filed this civil action for alleged constitutional violations pursuant to Bivens v. Six Unknown Named Agents of the Federal Bureau of Narcotics, 403 U.S. 388 (1971) ("Bivens") and for negligence under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671, et seq. Plaintiff seeks compensatory and punitive damages for the defendants' allegedly wrongful failure to prevent and to treat two separate injuries he suffered while performing his prison work duties.[1]

On January 14, 2008, the defendants filed a Motion to Dismiss the complaint, or, in the alternative, for Summary Judgment, along with a supporting Memorandum of Law.[2] By Order dated January 28, 2008, plaintiff was given thirty additional days to respond to defendants' Motion, and, in response, he has filed a Motion for Summary Judgment. For the reasons that follow, defendants' Motion to Dismiss or, in the alternative, for Summary Judgment will be granted, and plaintiff's Motion for Summary Judgment will be denied.

---

[1] By Order dated October 24, 2007, this case was transferred to this District from the United States District Court for the District of Columbia.

[2] Defendants also served plaintiff with Notice, pursuant to Local Civil Rule 7(K) and plaintiff was given the opportunity, pursuant to the Fourth Circuit's holding in Roseboro v. Garrison, 428 F.3d 309 (4th Cir. 1975), to file materials responsive to defendants' Motion.

## I. Background

According to the complaint, at around noon on September 30, 2005, two inmates at the Federal Correctional Complex Petersburg ("FCC Petersburg") found what plaintiff describes as a "hazard chemical canister" in a trash bin. The inmates were sent to the medical department for problems with their eyes and throats, and unit manager Larry Moody was notified. Moody called William Puryear and told him to have the canisters removed. Compl. at 4.

Plaintiff alleges that he was directed by Puryear, his work supervisor, to remove the canisters. While plaintiff was doing so, his eyes began to burn, he got "a funny strange feeling," and he began "gagging and spitting." Compl. at 4. Plaintiff asked Moody to let him get out of the trash bin because his eyes were burning and he "couldn't hardly see clear." When a few other inmates complained of the same problems, Moody sent them all to see defendant Elizabeth Panaguiton in the medical department. After examining the inmates, Panaguiton sent them to an eye specialist at another nearby correctional facility. The specialist informed the plaintiff that he had a "serious problem with [his] eyes." Compl. at 4-5.

On October 4, 2005, plaintiff went to "sick call" complaining about his vision, and was given an "idle" for six days.[3] After expiration of the "idle," plaintiff returned to work on October 10, 2005. Compl. at 5.

Six days later, on October 16, 2005, plaintiff was complaining about his eyes to defendant Puryear, but Puryear nonetheless ordered plaintiff to "get this place ready for inspection and move that trailer." Pursuant to those instructions, plaintiff attempted to board a forklift, but as a result of

---

[3] In their Motion to Dismiss, or, in the Alternative, for Summary Judgment, defendants explain that the "idle" excused plaintiff from working during the six-day period. Def's Mot. at 8.

2

his "visual problem" he "misjudged his step and slipped," falling on concrete and fracturing his right index finger. Plaintiff reported the injury and was instructed to go to the medical department, where he was examined by defendant Luis Negron. An x-ray was taken the following day, and plaintiff's fingers were "put in a wrap." Compl. at 5

Two days later, on October 19, 2005, plaintiff was examined by an unidentified orthopedic specialist. Plaintiff underwent surgery on October 26, 2005, for the placement of two "permanent" screws in his finger. Plaintiff was returned to FCC Petersburg and was given another "idle" as well as pain medication. From that time through mid-January, 2006, plaintiff went on numerous sick calls and was given repeated "idles;" in plaintiff's words, "it's been so many they stopped giving [him] pink slips for the two matter[s] (eyes and finger)." Compl. at 6. Plaintiff also was sent to see an "outside retinal specialist," Dr. Combs, who allegedly told plaintiff that he should not be working in his condition. Compl. at 7. Plaintiff also addressed complaints to Dr. Jeffrey Allen regarding his treatment and medication, but Dr. Allen did not respond.

As defendants, plaintiff names Harley G. Lappin, Director of the Federal Bureau of Prisons; BOP Mid-Atlantic Regional Director Kim White; FCC Petersburg Warden Vanessa Adams; Laurene Sharpe; Unit Manager Larry Moody; Dr. Jeffrey Allen; physician's assistants Luis Negron, Elizabeth Panaguiton, and Richard Forth; and Safety Officer William Puryear. Compl. at 3-4. Each defendant is sued in his or her individual and official capacities.

Plaintiff alleges that the defendants conspired to deprive him of his rights under the First, Fifth and Eighth Amendments; were deliberately indifferent to his safety and serious medical needs; and retaliated against him. Compl. at 7-8. Additionally, when the complaint is liberally construed, it appears that plaintiff also contends that defendants' acts or omissions give rise to a claim for

3

negligence under the Federal Tort Claims Act ("FTCA"), which allows a plaintiff to file a civil action against the United States for torts committed by government employees acting within the scope of their employment. 28 U.S.C. § 2679(b)(1). Plaintiff seeks unspecified declaratory relief, as well as an aggregate award of $7,500,000 in compensatory and punitive damages from all defendants.

II.

The defendants have filed a Motion to Dismiss or, in the Alternative, for Summary Judgment. The defendants argue that the complaint is subject to dismissal for lack of subject-matter jurisdiction and for failure to state a claim, pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, on several grounds. First, they contend that plaintiff's claims are barred by the operation of the so-called "exclusivity" provision of the Inmate Accident Compensation Act ("IACA"), 18 U.S.C. § 4126. Second, they argue that plaintiff's claims under the FTCA, even if not barred by the IACA, are untimely and must be dismissed because the Court lacks subject matter jurisdiction over them. Third, they assert that any claims against defendants in their official capacities are barred by the doctrine of sovereign immunity. Fourth, they argue that plaintiff has failed to state a claim for which relief can be granted under Bivens against any of the named defendants and that, in any event, defendants are entitled to qualified immunity.

### III. Standards of Review

A. Motion to Dismiss

1. Subject-Matter Jurisdiction

Pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, the Court may dismiss a a complaint or its claims for lack of subject-matter jurisdiction. When a defendant challenges the

4

existence of the Court's subject-matter jurisdiction, the Court may "regard the pleadings as mere evidence on the issue [] and may consider evidence outside [those] pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991); see Virginia v. United States, 926 F.Supp. 537, 540 (E.D.Va. 1995) (noting that, upon a defendant's challenge to the existence of subject-matter jurisdiction, the court is to "look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject[-]matter jurisdiction exists"). As the party asserting jurisdiction, it is plaintiff's burden to prove that federal jurisdiction over his claim is proper. McNutt v. General Motors Acceptance Corp., 298 U.S. 178, 189 (1936); Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

2. Failure to State a Claim

Additionally, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court may dismiss a complaint or its claims that fail to state a claim for which relief can be granted. A Rule 12(b)(6) Motion to Dismiss tests the sufficiency of the complaint and does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses. Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir.), cert. denied, 510 U.S. 1993 (1990). The Court is required to presume that all factual allegations in the complaint are true and must accord all reasonable inferences to the non-moving party. See Chao v. Rivendell Woods, Inc., 415 F.3d 342, 346 (4th Cir 2005). To survive a 12(b)(6) Motion, the complaint must contain enough allegations of fact "to state a claim for relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 127 S.Ct. 1955, 1974 (2007). In evaluating plausibility, the Court may not rely on mere "labels and conclusions" or plaintiff's "formulaic recitation of the elements of a cause of action." Id. at 1965. Instead, the

factual allegations must be enough to raise "a right to relief above the speculative level." Id. (emphasis added). Where a plaintiff fails to "nudge[] [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." Id. at 1974 (emphasis added).

### B. Motion for Summary Judgment

Finally, under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper if "there is no genuine issue as to any material fact and ... the movant is entitled to judgment as a matter of law." For a party's evidence to raise a genuine issue of material fact, it must be "such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). In considering a Rule 56(c) Motion, the Court is required to view the record in the light most favorable to the non-moving party. However, when a Motion for Summary Judgment is properly supported by affidavits or other evidence meeting the requirements of Rule 56, the opposing party may not rest upon the allegations contained in the pleadings and must instead present evidence sufficient to show the existence of a genuine issue for trial. If the opposing party fails to present such evidence, summary judgment, if appropriate, should be entered.

### IV. Analysis

### A. Application of the IACA to the Instant Claims

Defendants argue as a threshold matter that this Court lacks subject-matter jurisdiction over plaintiff's claims for damages under both Bivens and the FTCA as a result of the so-called "exclusivity" provision of the IACA. The defendants' argument is correct as to the plaintiff's FTCA claims, but must be rejected as to the plaintiff's claims under Bivens.

The IACA and its accompanying regulations authorize Federal Prison Industries, Inc., a federal corporation, to pay inmates "for injuries suffered in any industry or in any work activity in

connection with the maintenance or operation of the institution in which inmates are confined." 18 U.S.C. § 4126(c)(4); see 28 C.F.R. §§ 301.101, et seq. In United States v. Demko, 385 U.S. 149 (1966), the Supreme Court held that the IACA is the exclusive remedy for a federal prisoner injured in the performance of an assigned task while incarcerated, and precludes litigation for the recovery of additional damages under the FTCA. Moreover, the IACA is also the exclusive remedy when a work-related injury subsequently is aggravated by negligence or malpractice on the part of prison officials. Thompson v. United States, 495 F.2d 192 (5th Cir. 1974).

In this case, according to the plaintiff's own allegations, both of his injuries occurred while he was performing prison work assignments. Specifically, plaintiff alleges that his eye injury occurred when he was directed to remove some canisters from a trash bin and thereby allegedly was exposed to hazardous chemicals. Compl. ¶¶ 1-6. Plaintiff also states that he suffered a fracture of his finger when he fell from a forklift which he had been directed by his work supervisor to use to remove a trailer. Compl. ¶¶ 11-13. Since plaintiff's injuries thus admittedly arose during his performance of assigned prison tasks, the IACA precludes his claim under the FTCA, and the defendants' motion to dismiss that claim for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. Rule 12(b)(1) will be granted.

However, the situation is otherwise as to the preclusive effect of the IACA on plaintiff's claims under Bivens. Currently, the federal circuits are split on the question of whether the IACA bars Bivens claims against prison officials in their individual capacities. Although the Tenth, Sixth and Eighth Circuits have held that a Bivens claim for damages and equitable relief arising out of any such injury is barred by the IACA, those circuits have only done so in unpublished opinions. See Alvarez v. Gonzales, 155 Fed. Appx. 393, 2005 WL 3008788 (10th Cir. Nov. 10, 2005)

(unpublished); Walls v. Holland, 198 F.3d 248, 1999 WL 993765 (6th Cir. Oct. 18, 1999) (table) (unpublished); Drummond v. U.S. Att'y Gen., 37 F.3d 1503 (8th Cir. 1994) (unpublished). By contrast, the Seventh and Ninth Circuits have held in published opinions that the IACA does not preclude Bivens claims arising out of such injuries against defendants in their individual capacities. Vacarro v. Dobre, 81 F.3d 854, 857 (9th Cir. 1996); Bagola v. Kindt, 39 F.3d 779, 780 (7th Cir. 1994).

The United States Court of Appeals for the Fourth Circuit has yet to rule on this question in a published opinion. See Ezebuihe v. U. S. Dep't of Justice, No. 5:07-75, 2008 WL 3850739, at *5 (N.D. W. Va. Aug. 15, 2008)("The Fourth Circuit has not specifically decided whether a Bivens action may be maintained by an inmate when the injury resulted from a work-related accident."). However, a discernable trend would appear to indicate that the Fourth Circuit is likely to join those circuits which hold that the IACA does not preclude Bivens claims arising out of prisoners' work-related injuries against defendants in their individual capacities. District courts in the Fourth Circuit have found that the IACA, while barring FTCA claims for injuries sustained during prison work assignments, does not also bar Bivens suits against prison officials. See Yorkey v. Pettiford, No. 8:07-1037, 2007 WL 2750068, at * 5 (D.S.C. Sept. 20, 2007), aff'd, 2008 WL 886036 (4th Cir. Mar. 31, 2008); Dabney v. Bledsoe, No. 1:03cv193, 2006 WL 1376903, at * 2 (N.D. W. Va. May 17, 2007).

In addition, in the unpublished case of United States v. Wright, 59 F.3d 168, 1995 WL 378594, at * 6 (4th Cir. June 27, 1995) (table), a district court denied a federal prisoner's motion to compel the United States Marshals Service to pay for surgery for a hernia that he received while performing labor during a prison work detail. In affirming the district court's denial of that motion,

the Fourth Circuit noted that the prisoner's "remedy for a work-related injury suffered while in prison is a claim under the federal prisoner workers compensation system, 18 U.S.C. § 4126 [i.e., the IACA]. United States v. Demko, 385 U.S. 149, 154 (1966)." Id. Additionally, however, the Court noted that if the prisoner believed his medical needs were being ignored, "he [could] bring an action under the Eighth Amendment for deliberate indifference thereto. Cf. Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics, 403 U.S. 388 (1971)." Id.

While not directly controlling on the issue, the Fourth Circuit's disposition of the prisoner's motion to compel in the Wright case suggests that the Court when squarely presented with the question will be inclined to allow Bivens suits to proceed in situations where inmates suffer work-related injuries. Based upon that recognition, and taking into consideration the fact that, as will be discussed, the defendants are otherwise entitled to judgment on the merits of plaintiff's Bivens claims, their motion to dismiss those claims pursuant to Fed. R. Civ. P. Rule 12(b)(1) based upon the preclusive effect of the IACA will be denied.

B. Timeliness of Plaintiff's FTCA Claim

Because plaintiff's FTCA claim is barred as a matter of law by the IACA, it is unnecessary for the Court to adjudicate the defendants' alternate argument that the claim is also subject to dismissal by operation of the applicable statute of limitations.[4]

---

[4]Nonetheless, it is noted that the defendants' position that the plaintiff's FTCA claim was filed untimely is misplaced. Title 28 U.S.C. §2401(b) provides that a plaintiff wishing to invoke the jurisdiction of the federal courts under the FTCA must present his administrative claim "in writing to the appropriate Federal agency within two years after such a claim accrues or unless [an] action is begun within six months after the date of mailing, by certified or registered mail, of notice of final denial of the claim by the agency to which it was presented." The requirement that a lawsuit must be filed within six months of an agency's denial of an administrative claim is "jurisdictional and may not be waived." Henderson v. United States, 785 F.2d 121, 123 (4th Cir. 1986).

In this case, the defendants have submitted evidence which demonstrates that plaintiff filed

C. Plaintiff Fails to State a Claim for Supervisory or Personal Liability Against Defendants Lappin, White, Adams, Forth and Sharpe

Review of plaintiff's complaint makes it apparent that several of the named defendants can have no liability to him as a matter of law. Defendant Harley G. Lappin is identified as the Director of the BOP, Kim White is the BOP's Mid-Atlantic Regional Director, and Vanessa Adams is named as the warden of FCC Petersburg. However, the complaint is utterly devoid of any allegations that these defendants had any direct or personal involvement in the events upon which plaintiff's claims are based. Therefore, it appears that plaintiff has named them as defendants in this suit solely by virtue of their supervisory positions. However, it is well settled that the doctrine of *respondeat superior* cannot form the basis for liability in a Bivens action. Trulock v. French, 275 F.3d 391, 402 (4th Cir. 2001); Vinnedge v. Gibbs, 550 F.2d 926, 928 (4th Cir. 1977) (Bivens liability will lie only "where it is affirmatively shown that the official charged acted personally in the deprivation of plaintiff's rights.") Here, where plaintiff alleges no personal, direct involvement by defendants Lappin, White and Adams in the constitutional harms he allegedly suffered, those individuals can have no liability to him based upon their supervisory positions.

---

an FTCA administrative claim alleging that the BOP was responsible for his eye and finger injuries in March, 2006. Docket #40, Ex. C. The claim was denied on May 17, 2006, and the letter of denial was sent via certified mail to the plaintiff on May 19, 2006. Id. The defendants assert that this federal lawsuit was not filed until December 29, 2006, "well outside the six-month limitations period" of § 2401.(b), but they are mistaken. Careful review of plaintiff's complaint reveals that, while it was date-stamped as officially filed by the Clerk of the Court on December 29, 2006, it was stamped as received by the Clerk on November 17, 2007. Docket #1 at 1. It is well settled that a when a pleading is submitted by a prisoner, it is deemed "filed" as of the date it is delivered to prison officials for mailing. Houston v. Lack, 487 U.S. 266 (1988); Lewis v. City of Richmond Police Dep't, 947 F.2d 733 (4th Cir. 1991). Here, then, where the letter denying the plaintiff's FTCA administrative claim was mailed to him on May 19, 2006, and the instant complaint was received by the court on November 17, 2006, it is apparent that the complaint was delivered to prison authorities for mailing and hence was "filed" within the applicable six-month period specified in § 2401.(b).

Similarly, plaintiff has named as defendants Laurene Sharpe and Richard Forth, but he has included no factual allegations within the complaint as to the manner in which these individuals participated in the events giving rise to his claims. In a Bivens suit, to state a claim against a defendant, a plaintiff must specify the acts taken by the defendant which violated his constitutional rights. Willis v. Ashcroft, 92 Fed.Appx. 959, 960 (4th Cir. 2004). Here, then, where plaintiff points to no particularized involvement by defendants Sharpe or Forth in the harms he allegedly suffered, he has failed to state a claim for which relief can be granted against those individuals. Accordingly, plaintiff's claims against defendants Lappin, White, Adams, Sharpe and Forth will be dismissed pursuant to Fed. R. Civ. P.12(b)(6).

D. The Defendants are Entitled to Judgment on Plaintiff's Bivens Claims

Interpreted liberally in the light of plaintiff's pro se status, the complaint seeks damages under Bivens for three claims of constitutional deprivation against the remaining defendants. First, plaintiff arguably alleges that defendants Puryear and Moody were deliberately indifferent to his safety when they ordered him to retrieve the canisters from the trash bin, and that Puryear did so a second time by directing him to operate the fork lift. Second, plaintiff contends that defendants Allen, Negron and Panaguiton were deliberately indifferent to his resulting serious medical needs. Third, plaintiff alleges without meaningful explanation that the defendants jointly conspired to deprive him of his constitutional rights, and retaliated against him in an unspecified manner. Because plaintiff has failed to meet his burden of presenting evidence sufficient to show the existence of a genuine issue for trial as to his claims of deliberate indifference to his safety and serious medical needs, Anderson, 477 U.S. at 248, summary judgment will be entered in favor of the defendants on those claims. In addition, defendants' Motion to Dismiss pursuant to Rule 12(b)(6) will be

granted as to plaintiff's wholly conclusory claims of conspiracy and retaliation.

### 1. Deliberate Indifference to Plaintiff's Safety

Plaintiff appears to allege, albeit without specificity, that defendants Moody and Puryear were deliberately indifferent to his safety when they ordered him to retrieve the canisters from the trash bin, and that Puryear was deliberately indifferent to his safety a second time in directing him to operate the fork lift. It is well established that a prison official cannot act with deliberate indifference unless the official knows of and disregards an excessive risk to an inmate's safety or health. Farmer v. Brennan, 511 U.S. 825, 837 (1994). In other words, the official not only must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, but must also actually draw such an inference. Id. Where, as here, a prisoner brings a claim based on a work-related injury, "it is not the injury itself that gives rise to a Bivens claim. Rather, in such cases the court must determine whether prison officials acted or failed to act with a sufficiently culpable state of mind, in order to determine whether a prisoner's injury was the result of punishment or a tragic accident." Bagola v. Kindt, 131 F.3d 632, 646 (7th Cir. 1977).

In this case, even when viewing the record in the light most favorable to the plaintiff, he has failed to come forward with evidence sufficient to raise a genuine issue of material fact as to either component of his claim that defendants Moody and Puryear recognized and disregarded serious threats to his safety. Anderson, 477 U.S. at 248. As to the order that was given to plaintiff to remove the canisters from the trash bin, plaintiff alleges that unit manager Moody knew that two inmates had been sent to the medical department for problems with their eyes and throats after being exposed to the canisters, and that Moody told defendant Puryear to have the canisters removed. Puryear directed plaintiff to remove the canisters, and while doing so plaintiff's eyes began to burn and he

began to feel funny, so he asked Moody to let him get out of the trash bin. Plaintiff was then sent to the medical department for evaluation.

In response to the defendant's motion for summary judgment, the plaintiff has come forward with no evidence sufficient to create a genuine issue of material fact as to whether either of these defendants perceived the task of removing the canisters as posing an excessive risk to plaintiff's safety or health, nor does plaintiff make any showing that the defendants chose to disregard such awareness. Although plaintiff alleges that Moody knew that two inmates had been sent to the medical department after coming into contact with the canisters, he does not contend either that the inmates' medical conditions were serious or that Moody was actually aware that serious injuries had occurred. Moreover, even if Moody had recognized that canisters posed a serious risk of harm to plaintiff's safety, plaintiff does not contend that Moody communicated such an awareness to Puryear, and according to plaintiff it was Puryear who directed him to remove the canisters from the trash.

The sole evidentiary support plaintiff offers in opposition to defendants' motion on this point is the affidavit of Alfred P. Phillips, an inmate who attests that he heard defendant Panaguiton inform Moody that two inmates were being taken to an eye specialist at FCC Petersburg Low, and that some hazardous chemical was contaminating the trash bin behind the kitchen area.[5] Again, however, this affidavit fails to establish that either Moody or Puryear perceived that removing the canisters from the trash posed an excessive risk of harm to plaintiff's safety, or that they willfully disregarded such knowledge. There thus is nothing in the record which would cause a reasonable jury to conclude that in directing plaintiff to remove the canisters from the trash, either Moody or Puryear acted with

---

[5]This affidavit is among the materials submitted with the plaintiff's summary judgment motion. Docket #48.

13

a sufficiently culpable state of mind for that action to constitute a violation of plaintiff's constitutional rights. Bagola, 131 F.3d 632.

Similarly, as to the injury plaintiff suffered to his finger, plaintiff alleges that although he had been complaining to Puryear about his eye problems, Puryear nonetheless told him to use the forklift to get the area ready for an inspection, and that plaintiff's "visual problems" cause him to misjudge his footing and fall from the forklift. Again, however, plaintiff has failed to come forward with evidence which would raise a genuine issue of material fact as to whether Puryear in giving him that instruction recognized and disregarded a serious threat to plaintiff's safety. Therefore, as there is nothing in the record to support the conclusion that either of plaintiff's injuries was the result of willful punishment rather than unfortunate accident, summary judgment will be entered for the defendants on both components of plaintiff's claim of deliberate indifference to his safety. Cf. Bagola, 131 F.3d 632.

## 2. Deliberate Indifference to Plaintiff's Serious Medical Needs

Prisoners are entitled to reasonable medical care and can sue prison officials under the Eighth Amendment if such care is inadequate. Estelle v. Gamble, 429 U.S. 97, 104-05 (1976). However, to establish that inadequate medical treatment rises to the level of a constitutional violation, a plaintiff "must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Id. at 105; see also Staples v. Va. Dep't of Corr., 904 F. Supp. 487, 492 (E.D. Va. 1995). Under this standard, a prisoner must allege two distinct elements to state a claim upon which relief can be granted. First, he must allege a sufficiently serious medical need. See, e.g., Cooper v. Dyke, 814 F.2d 941, 945 (4th Cir. 1987) (determining that intense pain from an untreated bullet wound is sufficiently serious); Loe v. Armistead, 582 F.2d 1291 (4th Cir. 1978) (concluding

14

that the "excruciating pain" of an untreated broken arm is sufficiently serious). Second, he must allege indifference to that serious medical need.

For this second prong, an assertion of mere negligence or malpractice is not enough to constitute an Eighth Amendment violation. Estelle, 429 U.S. at 106; Daniels v. Williams, 474 U.S. 327, 328 (1986); Miltier v. Beorn, 896 F.2d 848, 851 (4th Cir. 1990). A prisoner's disagreement with medical personnel over the course of his treatment does not make out a cause of action. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Russell v. Sheffer, 528 F.2d 318, 319 (4th Cir. 1975) (per curiam); Harris v. Murray, 761 F. Supp. 409, 414 (E.D. Va. 1990). Further, "[a] complaint that a physician has been negligent in diagnosing . . . a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." Estelle, 429 U.S. at 106. "Deliberate indifference may be demonstrated by either actual intent or reckless disregard." Miltier, 896 F.2d at 851. However, the prisoner must demonstrate that defendants' actions were "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Id. (citations omitted).

Here, plaintiff has utterly failed to meet his burden on summary judgment of establishing any genuine issue of material fact for trial as to either component of his Eighth Amendment claim. As to the diagnosis and treatment of plaintiff's eye problem, the defendants have submitted exhibits which demonstrate that plaintiff was evaluated by an ophthalmologist on September 30, 2005, the same day he removed the cans from the trash receptacle and complained of a burning sensation in his eyes. The ophthalmologist diagnosed irritation and prescribed teardrops. Def. Ex.1, Response to Request for Administrative Remedy. Three days later, on October 3, 2005, plaintiff was seen by an optometrist, who concurred with the opthalmologist's opinion. Id. In addition, plaintiff was

referred to an outside retinal specialist. Id. On January 4, 2006, plaintiff again was evaluated by a contract opthalmologist, which revealed a normal examination. He also was scheduled for an appointment with his primary care provider to discuss and review the results of that appointment. Def. Ex.1, Administrative Remedy Regional Appeal. Plaintiff was scheduled to be seen by the opthalmologist again on March 6, 2006, but he did not show up for the appointment and the appointment was rescheduled. Id.

As to the injury plaintiff suffered to his finger, defendants' exhibits demonstrate that plaintiff reported to the Ambulatory Care Clinic on the day he was hurt, where his finger was examined and diagnostic x-rays were ordered. Def. Ex.2, Administrative Remedy Regional Appeal. The x-rays were completed the following day, and an oblique fracture of the distal phalynx was diagnosed. Two days later, plaintiff was evaluated by a contract orthopedic specialist, and surgery was recommended. Surgery was performed the following week, on October 26, 2005, and a follow-up appointment on November 10, 2005, revealed that the operative site was healing well. Id. Sutures were removed, and plaintiff was instructed to begin self-administered range of motion exercises. Plaintiff was re-evaluated by the orthopedic specialist on November 16, 2005, and was advised to continue the exercises. The orthopedic specialist examined plaintiff a third time on December 21, 2005, and recommended another follow-up appointment two months thereafter, along with a repeat diagnostic x-ray. In addition, plaintiff was issued a medical convalescence through June 12, 2006. Id.

Defendants' motion for summary judgment, including the attached uncontested exhibits and medical records, demonstrate that none of the defendants violated plaintiff's Eighth Amendment rights. Although the Court must construe all inferences in the light most favorable to the plaintiff, it is apparent on this record that the medical care plaintiff received both for his eye problem and his

16

fractured finger was more than adequate to satisfy the Eighth Amendment. The evidence demonstrates, and indeed plaintiff does not contest, that with respect to both of his injuries, plaintiff was evaluated immediately by medical staff, prescribed treatment, and excused from work. Additionally, the uncontested evidence makes clear that plaintiff received appointments with contract specialists, follow-up evaluations, and ongoing treatment and care for both of his medical conditions.

Therefore, assuming for purposes of this disposition that plaintiff's injuries constituted sufficiently serious medical conditions to support a constitutional claim, see Cooper, 814 F.2d at 945, plaintiff has utterly failed to establish that defendants' conduct in responding to and treating his injuries even approached the standard for deliberate indifference. Nothing in the record indicates that defendants acted in a manner even approaching one "[s]o grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." Miltier, 896 F.2d at 851. Instead, far from disregarding an excessive risk to plaintiff's health, Farmer, 511 U.S. at 837, defendants took swift initial action to evaluate and treat both of plaintiff's injuries, and provided him with extensive follow-up care in both instances.

Accordingly, as the uncontested record demonstrates that defendants did not exhibit deliberate indifference to plaintiff's medical needs, summary judgment will be granted in their favor.

### 3. Retaliation and Conspiracy

As discussed above, plaintiff also alleges in a generalized manner that the defendants conspired to violate his constitutional rights and retaliated against him in an unspecified fashion. Claims of retaliation by inmates are generally treated with skepticism because "[e]very act of discipline by prison officials is by definition 'retaliatory' in the sense that it responds to prisoner misconduct." Cochran v. Morris, 73 F.3d 1310, 1317 (4th Cir. 1996); Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994), cert.

denied, 514 U.S. 1022 (1995). To succeed on a claim of retaliation, an inmate must allege facts sufficient to demonstrate that the alleged retaliatory act "was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75. Thereafter, plaintiff must demonstrate that he suffered some adverse impact or actual injury. ACLU of Md., Inc. v. Wicomico County, Md., 999 F.2d 780, 785 (4th Cir. 1993) (citing Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d 1134, 1140 (4th Cir. 1990)). Additionally, an inmate must come forward with specific evidence "establish[ing] that but for the retaliatory motive, the complained of incident ... would not have occurred." Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995); accord McDonald v. Hall, 610 F.2d 16, 18-19 (1st Cir. 1979); Ponchik v. Bogan, 929 F.2d 419, 420 (8th Cir. 1991) (plaintiff must show that action would not have occurred "but for" the alleged reprisal); Collinson v. Gott, 895 F.2d 994, 1002 (4th Cir. 1990) (Phillips, J., concurring).

Similarly, unsupported and conclusory allegations are insufficient to support a claim of governmental conspiracy to violate a litigant's constitutional rights. Martin v. Malhoyt, 830 F.2d 237, 258 (D.C. Cir. 1987).

The instant complaint contains nothing more than bare allegations of conspiracy and retaliation, which are insufficient as a matter of law to support such claims. Adams, 40 F.3d at 75. Moreover, plaintiff has not alleged, much less demonstrated, that he has suffered any adverse impact or actual injury as a result of any claimed conspiracy or retaliation by the defendants. Accordingly, defendants' motion to dismiss the claims of retaliation and conspiracy will be granted, and those claims will be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be had.

E. Sovereign and Qualified Immunity

Given that the defendants have established their entitlement to judgment as a matter of law on

the merits of plaintiff's claims against them, it is unnecessary for the Court to address their arguments on the questions of sovereign and qualified immunity.

F. <u>Plaintiff is Not Entitled to Summary Judgment on his Claims</u>

In response to the defendants' motion for summary judgment, plaintiff has filed what is captioned as a motion for summary judgment in his favor. Docket #48. Much of this pleading in legal effect is simply a reply to the defendants' motion, including citations to case authorities and legal argument. To the extent that the attachments that plaintiff provides are pertinent to his claims, such as the affidavit of inmate Alfred P. Phillips, they are discussed earlier in this Opinion. Because plaintiff fails to establish that the uncontested facts entitle him to judgment as a matter of law on any of his claims, his motion for summary judgment will be denied. Fed. R. Civ. P. 56(c).

## V. Conclusion

For the foregoing reasons, defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment will be granted, and plaintiff's Motion for Summary Judgment will be denied. An appropriate Order shall issue.

Entered this 22nd day of Sept. 2008.

Alexandria, Virginia

/s/
Liam O'Grady
United States District Judge